Barbour, C.J.
(dissenting). There was one question in this case which, it appears to me, ought to have been submitted to the jury, viz.:
One of the witnesses, who was a passenger with Gonzales upon the train, testified that; after the train had reached Mount Vernon, one of the brakemen of the company came and hallooed for the passengers to get out, saying, “All out for Mount Vernon; ” and that the witness, after the train had stopped, got *515 off the car upon one side as Gonzales was getting off from the other side; and that he heard no signal, by bell or whistle, from the coming express train. Indeed, the fact that no signal was given by the incoming train was fully established by the evidence in the" case.
The question,- then, is, whether Gonzales, not hearing the signal which he, as an old resident of Mount Vernon and a frequent passenger upon the cars, must have known was usually made by an incoming train, and hearing the direction of the brakeman to the passengers for that place to get off the cars, had not a right to receive such directions as an assurance on the part of the company that it was perfectly safe to obey such directions, and get off the car, as he did, without looking to see whether another train might not be coming.
I think this case is a much stronger one in favor of the plaintiff upon the point in question than was that of Ferris v. The Union Ferry Co. (37 N. Y. R., 312), where it was held by the Court of Appeals that the mere letting down of the guard-chain of a ferry-boat, by an employe, as was customary upon the arrival of such boat at her dock, was such an assurance to the passengers that the boat was properly secured to the bridge, and the exit safe, as justified them in attempting to walk off from the boat in the ordinary way, and that negligence could not be imputed to them for doing so. In that case, it was the mere sound of a dropping chain that induced the plaintiff to suppose the boat was fastened to the bridge, while here, the passengers, it appears to me, might well consider the directions of the brakeman as an assurance by an employe of the company that the passengers could obey that direction with safety, and alight from the cars.
Besides, it is to be considered that the person injured was partially blind, and, for that reason, was not only, probably, compelled to rely upon information obtained from others to supply his defect of vision, but he had a perfect right to do so. His being upon the cars, although partially blind, was not negligence per se / nor, being there, would an attempt to get off when *516 the cars stopped have been, negligence raider all circumstances. In leaving the train, however, he was bound to do all that a prudent, cautious man, in his condition, would have done to insure the safety of his person. If such a man, for instance, would not have relied, absolutely, upon the fact that no bell or whistle had been sounded indicating the coming of a train, but would have inquired of some bystander whether it was safe to get out, it would have been the duty of Gonzales to obtain the information from some one who could see. But, certainly, it was not necessary for him to make such inquiry after the direction of the brakeman was given, if he had a right to believe, considering all the circumstances, that such direction was, in effect, an. assurance to the passengers that all was safe.
For these reasons, I am of opinion that the learned justice erred in directing a dismissal of the complaint, instead of submitting tbe question as to negligence on the part of Gonzales to the jury; and that the order dismissing the complaint should be reversed, and a new trial granted, with costs to abide the event.